Good morning. My name is Tyrone Mitchell. May it please the court. I represented Mr. Hernandez-Morales in the district court case trial with regards to the United States of America v. Mr. Hernandez-Morales. It was a bench trial that lasted a day. The sole issue with regards to this case is whether or not the district court erred in allowing the government to use the underlying deportation with regards to his conviction of illegal reentry of 1326. Which one? Excuse me, Judge. Which underlying? Yes, Your Honor. So let me lay it out as quickly as I can. Here we go. Take a deep breath here. Judge, in 2001, let's back it up a little bit further. My client was born in Mexico at an early young age and was brought to the United States by his parents. In 2001, he was arrested and was deported. In 2006, he returned again to the United States and was again deported after being arrested. And again, he returned in 2007 and was deported again. So there were three main deportations that were involved with respect to this case. With respect to the 2001, the appellants take no issue as to its deportation and what occurred at that level. The issue becomes surrounded around with regards to the deportation that occurred in 2006. At that time, he was interviewed by an officer on the issue whether or not he was seeking or would seek asylum within the United States. He had made a claim for asylum with the immigration officer. The immigration officer denied that request. However, he had a right to have that hearing, or he requested a hearing to be set before an immigration judge with regards to the officer's determination. A hearing date was set, I believe, in Laredo, Texas. Prior to getting there or being transported there, he was deported again and he did not have his day in court, so to speak, with regards to the deportation in 2006 and having an immigration judge look at that issue. Counsel, my question is the following. It sounds like you are conceding that the 2001 order was valid. Yes, Your Honor. So if the 2001 order was valid, and does anything else matter since he was not given permission to return after being deported? Yes, Your Honor. Does it matter how many more times he was removed? It does, Your Honor, and it matters to this extent. Your Honor, times change, things change. With regards to the deportation proceedings that occurred in 2001, the Court is correct. I do concede that that was a valid deportation order. And his crime of conviction is? With regards to the 2001? No. His crime of conviction is illegal reentry. So I guess what I'm struggling with is where could there possibly be any prejudice, because there's at least one valid removal or deportation order and he's back in the country illegally. And even if there were, you know, ten that were no good scattered in between, I'm not sure where that gets him. Yes, Your Honor. Because the point that I was going to make, Judge, with regards to 2001, there wasn't an issue with regards to him seeking asylum. He didn't have that fear. But the fear arose in 2006. There was a change between the deportation order that occurred in 2001 versus the deportation order in 2006. Did he say anything in 2007 when they picked him up about fearing being returned to Mexico? He did not, Your Honor. Shouldn't he have said something at that point? Judge, with respect to that issue, I always find it interesting in terms of the short answer is yes. But, Judge, in terms of how he would have perceived his orders as what occurred in 2006, we seem to be placing the onus on him in bringing up this issue. Well, that's not unreasonable in an asylum case to say don't send me back there. They're going to torture me. They're going to persecute me. They're going to do something to me because I'm indigenous, because I'm tall, because I'm something. Correct, Your Honor. However, what occurred in 2006 where he believed he had at least made a claim and that he had a right to have a judge look at that claim, his position or belief was, well, let's back up in two ways. Two, that that order with respect to the 2006 with regards to seeing an immigration judge, with regards to his asylum case, was never adjudicated. I put the onus on the government at that time to have told him about it. It's just interesting that in 2007, just one year later, that he couldn't utter those words, I fear going back to Mexico. And if he can't make a claim in 2007, it's unlikely that even if the government were inclined to correct its mistake in 2006, that he would be entitled to asylum. So sort of on the merits, there's just no there there. There's no equity. And he's been in and out of the country several times. He was never able to tell them before or articulate that he feared going back to Mexico, and he's got a valid order. It's 2001, and that's all the government relied on was the 2001 order. Yes, Your Honor. However, it's the appellate's position that with respect to, in my belief, when you have a situation like this, which I think is a little bit different than most, where you have in 2006 where he believed and where he was seeking at least a judicial review of his asylum claim, that the government should not be allowed to then jump back over into 2001. Except counsel, I'm looking at page 8 of the record. It's got many page numbers on it, but I think it's administrative record 8. At the affidavit dated October 30th, 2007, where your client affirmatively states, I do not have any fear or concern about being returned to my home country. I mean, it's more than the fact that he didn't complain. He affirmatively said he had no fear. So why, what is the government expected to do when he, in 2007, says he has no fear? Why can't they return him? Because with respect to, again, my position with regards to the 2006, I believe they had an affirmative duty that he had made that claim. But what difference does it make when he comes back in 2007 and says, I don't have fear? So at best, the record suggests that he had a period of, you know, a year or some small period of time when he was concerned, but he wasn't concerned earlier and he wasn't concerned later. By the time the order came down. A year later. I understand what the court's position is, but in terms of, I guess, his perception of the system as it had pertained to him the year before. He had put in and believed that he was going to get judicial review with respect to the 2006 deportation. But he knew that that judicial review had never taken place, so he knew he didn't have permission to come back into the United States. Now, there are other ways of solving that problem. He can go to a U.S. embassy in Mexico and say, I fear persecution in Mexico. I want to apply for asylum. He can do so at the border and say, I'm here seeking asylum. And they will treat him very, very differently. If he can't help himself to that extent. I understand, again, what the court's position is. I just, in terms of the appellate with respect to this case, I place the onus with regards to the government. I agree that he did make an affirmative step with regards to 2007. But it has always been our belief that with regards to 2006, he had a right to have that accomplished. And what they essentially did was, in terms of prosecuting this case, is use that 2007 deportation proceeding but then just totally jumped over the 2006 and went back to 2001. Why he didn't write or check the right box with regards to the asylum, it was a mistake that he made. But I rest on the fact that I believe that in 2006, he believed that his judicial rights or his rights were not going to be looked at. And I believe he was ready to get back or be deported back to Mexico. Counsel, you have about a minute left. I will save that time for rebuttal. Thank you, Your Honor. Thank you very much. We'll hear from the government. Good morning. May it please the Court. My name is Jane McLaughlin. I'm an assistant United States attorney from the District of Arizona. With respect to this case, the government urges this Court to affirm the district court's denial of the motion to dismiss the indictment, because Judge Campbell correctly found that this defendant failed to satisfy the statutory requirements for a collateral attack under Section D of 8 U.S.C. 1326. Now, at the outset, I'd like to clarify a couple of things for the Court. First of all, we are certainly dealing with three separate physical removals of the defendant from the country. But they are not all procedurally identical. The 2001 removal was an administrative expedited removal under 8 U.S.C. 1228B. That can only be accomplished because the defendant was at the time an aggravated felon. He didn't have the right to see an immigration judge for that proceeding. And, again, counsel noted that the defense waives any challenge to that removal. The 2006 removal was a reinstatement of the 2001 removal. And this is a key distinction because this Court has confirmed, and I refer the Court to the Morales-Izquierdo case cited in the government's brief, that removal and reinstatement are not equivalent. Congress didn't intend for them to be equivalent. Reinstatement came about in 1996 with some sweeping changes to the Immigration and Naturalization Act to make it easier for immigration officials to quickly remove people who had already had their full procedural rights. And this defendant got that in 2001. So in 2006, immigration officials reinstated the 2001 order, and reinstatements are done under the 2001. Kagan. We had litigation on that process, too. Thank you, Your Honor. And so in 2007, it was again a reinstatement of the 2001 order with different procedural requirements, all of which the defendant received in this case. And the 2007 reinstatement, the defendant's procedural rights are clearly set out in 8 CFR 241.8a and b, verification of identity, obtaining prior order of removal, determination that he has reentered illegally, and written notice to him that he's subject to removal and given an opportunity to make a statement. And if the Court looks at SER 7 in particular, you'll see that the defendant was given an opportunity to make a statement and he did not wish to contest the 2007 reinstatement. The next point I want to make is that this defendant is statutorily ineligible for asylum. And that would be under 8 U.S.C. 1158 and subsection b2a2 and b2b1. As an aggravated felon, he's not ever going to get asylum. He couldn't in 2006. He can't do it now. It's because he's an aggravated felon. The only remedy available to this defendant, he can't get discretionary relief or cancellation because he's prohibited as an aggravated felon. He could get cat relief, presumably. Yes, Your Honor. That's true. And I was forgetting cat relief. But he can get withholding of removal, and whether that be under cat or under the reasonable fear determination, the thing, the remedy that he could get is just basically a stay of removal to the country of Mexico. That's what he was claiming in 2006. And that's what he did not get an immigration judge's review of. So the government dismissed the case because of that and sent him back to Mexico. That's when in 2007 he affirmatively said at SER 8 that he didn't have a fear of returning. When so we did not prosecute based on that. We dismissed that case. When he came back yet again and committed another couple of felonies and was caught in the Department of Corrections, we prosecuted him based on the 2007 reinstatement. When he had said that his fear had abated, even if one gave him the large benefit of the doubt and said that his claim of fear was plausible, that fear had clearly abated and the government's, the immigration officials were allowed to rely on that in conducting the 2007 reinstatement with that list of rights that were available to him under 8 CFR 241.8. And it's true that this Court has held again in the Morales-Izquierdo case that a defendant can't precipitate a review or can't cause the government to have to re-adjudicate a claim by breaking the law again, that that shouldn't be countenanced by the court. And so we are asking this Court not to permit the defendant to do that. And finally, this defendant, with at the time that in 2007 when this was reinstated or in fact 2006, he had nine felony convictions and at least nine misdemeanors. He's acquired several more since then. He's not going to be able to establish the kind of prejudice that this Court has found is necessary in order to bring a collateral attack in an illegal reentry proceeding. Again, he didn't have any more fear. The fear apparently abated within that year. But fundamental unfairness requires first that he shows a violation of due process, and we believe that he can't do that. Bless you. But even if this Court were to find that he had shown some violation of due process, he still has to demonstrate the resulting prejudice. And the Court has found that this is what's called a plausible ground of relief or ground for relief from deportation, and that his life for freedom would be threatened in Mexico due to being in a protected category. It's the defendant's burden. He'd have to prove it's more likely than not. And as this Court is probably aware, for withholding, the standard is actually higher than for asylum, that the showing has to be more specific, and the fear has to be better grounded than just for an asylum claim. And if the Court looks at this defendant's claims in the record, they are very vague. And I refer the Court to ER 15-17, which is where the asylum officer, which is, of course, confusing because the defendant's ineligible for asylum, but the person's title is asylum officer. So the asylum officer had a reasonable fear interview. ER 15-17, also there's a small blurb in the defendant's own handwritten notes that's at ER 8. And he essentially delineates two fears. One is threats from other inmates in the United States that essentially if they see him in Mexico, they will harm him. And also fear that his status as a deported Mexican in Mexico might cause him to be persecuted there. And this Court has specifically found that neither of those claims constitutes a plausible ground for relief because essentially those aren't cognizable social groups. And I refer the Court to the Reyes Bonilla case in the government's brief regarding threats from criminals. And that one had to do with gangs in Guatemala and was considerably more specific than this defendant's claims. And also the Delgado-Ortiz v. Holder case in the government's brief held that being a deported Mexican in Mexico is not a cognizable social group. So we would argue that even if the Court were to find the defendant's claims of fear minimally plausible, I'm sorry, his claim of a violation of due process, his claim of prejudice would have to fail because his criminal history made it even less likely that an immigration judge would have picked the tiny window of relief that he has. Because, of course, as an aggravated felon, he's also ineligible for withholding except that he got only three years' prison on the underlying aggravated felony. If he had gotten more than five, then the immigration judge, it wouldn't even be discretionary. He can't get withholding. But this defendant got only three years. So an immigration judge could exercise discretion and give him withholding. And we would argue that somebody with his extensive, lengthy, decades-long criminal history was not going to get that discretionary relief from the immigration judge. So for all of those reasons, unless the Court has any other questions, the government will just ask that the Court affirm the district court's order in this case. I don't believe we have any more questions. Thank you. Thank you. Mr. Mitchell, you have some time remaining. Thank you again, Your Honor. Judge, I just wanted to point out that with regards to, I guess, the argument that the United States has made, that if there was a possibility for relief for Mr. Morales-Hernandez with respect to the case, that he should have been entitled to it. I do not believe it is fair for the government to have used the 2007 deportation and bootstrap it to the 2001 and not give him his day in court with regards to this one. The 2006? Yes. Yes, Your Honor. And for those reasons, Judge, we'd ask that you find relief with regards to the appellant. Thank you, Your Honor. Thank you very much. The case just argued is submitted, and we thank both counsel for their arguments.
judges: SCHROEDER, GRABER, BYBEE